IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JODEY GALVAN SULLLIVAN, | No. 2:11-CV-3252-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |
| _____/ | |

Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 16) and defendant's cross-motion for summary judgment (Doc. 18).

/ / /

/ / /

/ / /

## I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on December 23, 2003. In the application, plaintiff claims that disability began on December 19, 2003. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on January 28, 2005, before Administrative Law Judge ("ALJ") F. Keith Varni. In a September 15, 2006, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): "a very questionably severe impairment in the musculoskeletal system from minimal degenerative changes and from a presumptive diagnosis of fibromyalgia and a questionably severe mental impairment from a variety of diagnoses";

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: physically, light work; mentally, unskilled entry level work permitting work with the general public and interacting with co-workers and supervisors;

4. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

On June 8, 2007, the Appeals Council issued a decision remanding the matter. The Appeals Council identified the following defects in the ALJ's September 15, 2006, hearing decision:

1. The ALJ failed to address the medical Dr. Mohr's opinion that the claimant was incapable of even low stress jobs and could only sit three hours and stand two hours in an eight-hour day (Exhibit 11F);

2. The ALJ failed to address Dr. Frausto's opinion that the claimant was unable to work (Exhibit 23F);

3. The ALJ failed to provide a rationale for omitting the claimant's diagnosed obesity from the sequential evaluation; and

4. The ALJ failed to address statements provided by the claimant's mother.

///

///

On remand, the ALJ was instructed to "obtain all available updated medical records from the claimant's treating sources," evaluate plaintiff's obesity, and, if warranted, obtain evidence from a medical expert and/or vocational expert.

A second hearing was held before the same ALJ on January 23, 2008.  In a March 10, 2008, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

    1.    The claimant has the following severe impairment(s): "a very questionably severe impairment in the musculoskeletal system from minimal degenerative changes and from a presumptive diagnosis of fibromyalgia";

    2.    The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

    3.    The claimant has the following residual functional capacity: medium work except she is able to frequently climb, balance, stoop, kneel, crouch, and crawl;

    4.    Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, plaintiff can perform her past relevant work as a fiscal analyst.

After the Appeals Council declined further review on May 18, 2009, plaintiff appealed.

On February 26, 2010, the United States District Court for the Central District of California issued a decision reversing and remanding for further administrative proceedings.  The court concluded: (1) the ALJ failed to properly evaluate the severity of plaintiff's mental health impairments; and (2) the ALJ failed to properly assess limitations related to plaintiff's fibromyalgia.

A third administrative hearing was held on July 26, 2010, before ALJ Sharilyn Hopson.  In an October 6, 2010, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

    1.    The claimant has the following severe impairment(s): through the date last insured, the claimant had severe impairments involving morbid obesity, fibromyalgia syndrome, degenerative lumbar spine disc disease, depressive disorder, anxiety disorder, pain disorder, bulimia nervosa, and obstructive sleep apnea, as well as non-severe impairments involving mild carpal

|   |   |   |
|---|---|---|
| 1 |   | tunnel syndrome and degenerative cervical spine disc disease; |
| 2 | 2. | The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations; |
| 3 | 3. | The claimant has the following residual functional capacity: through the date last insured, the claimant had, and never lost for any significant period of time, the ability to perform light work except stand or walk two hours in an eight-hour workday, stand or walk eight hours in an eight-hour workday with normal breaks such as every two hours, occasionally stoop and bend, climb stairs but not ladders, no work at unprotected heights, no balancing, little more than simple repetitive tasks, no public contact, no intense interaction with supervisors or co-workers, no hypervigilance, no fast pace work, no responsibility for the safety of others, and no work around dangerous equipment; |
| 4 | 4. | Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, through the date last insured there were jobs which existed in significant numbers in the national economy which the claimant could have performed. |

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

1  Therefore, where the evidence is susceptible to more than one rational interpretation, one of
2  which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.
3  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal
4  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th
5  Cir. 1988).

### III.  DISCUSSION

In her motion for summary judgment, plaintiff argues:  (1) the ALJ improperly rejected the opinions of the testifying medical expert, Dr. Landau, in assessing the severity of her carpal tunnel syndrome; and (2) the ALJ improperly rejected the opinions of Drs. Frausto, DeVera, and Griffin in assessing the functional limitations posed by her mental disorders.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical

findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  See id. at 831.  In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

### A. Carpal Tunnel Syndrome

As to Dr. Landau, who appeared and testified at the third administrative hearing as an impartial medical expert, the ALJ stated:

> The medical expert, Dr. Landau, gave limits for the mild carpal tunnel syndrome, forceful gripping and frequent handling with occasional fingering, i.e., keyboarding. . . .  However, the evidence of record has shown that the objective findings consisted of only mild electrodiagnostic test findings. . . and that the observed hand functioning was quite normal. Ex. 10F at 9, ex. 15F; ex. 18F; ex. 30F at 6.  I therefore find [carpel tunnel syndrome] to be non-severe and non-limiting. . . .

While the ALJ gave significant weight to Dr. Landau's criticism of findings made by another doctor regarding plaintiff's ability to stand and walk, the ALJ rejected Dr. Landau's findings regarding carpal tunnel syndrome as "not well supported by the record."

Plaintiff argues:

> In assessing Ms. Sullivan's residual physical function, the ALJ found that her carpal tunnel syndrome did not even rise to the level of a legally severe impairment at step two (Tr. 777).  Specifically, she found

that the objective findings regarding that condition "consisted of only mild electrodiagnostic test findings" (Tr. 777). On that basis alone, the ALJ found that impairment to be "non-severe" (Tr. 777) and expressly excised from the assessment of medical expert Landau his findings referable to that condition: i.e., that she would be unable to perform any forceful gripping, grasping, or twisting; no more than occasional fine manipulations including keyboarding; and no more than frequent gross manipulation (testimony at Tr. 904-05; ALJ decision at Tr. 777, 781). Her analysis of the issue is unsound.

As to the EMG study referenced by the ALJ, plaintiff states:

> . . . The only doctor to have specifically considered that test and to have rendered an opinion as to the functional impact of that condition is medical advisor Landau. Dr. Landau affirmed that the test does reflect carpal tunnel syndrome and that the condition would reduce her ability to perform both gross and fine manipulations. . . . The ALJ herself is not competent to override the medical expert testimony with her own quasi-medical opinion. The record contains no other medical opinion interpreting those test results in an manner that would impugn Dr. Landau's assessment of that condition's impact on Ms. Sullivan's upper extremity function. . . .

Plaintiff's argument would be persuasive if, as plaintiff's states, the ALJ based her conclusion as to carpal tunnel syndrome solely on the EMG. Such is not the case here. In addition to the mild EMG test results, the ALJ noted "that the observed hand functioning was quite normal." Three examining physicians – Drs. Lin, Ella-Tamayo, and Sophon – all found that plaintiff was not limited in her upper extremities. Far from supplying her own "quasi-medical opinion," the ALJ properly resolved the conflict among the opinions (Drs. Lin, Ella-Tamayo, and Sophon one the one hand versus Dr. Landau on the other) and made a finding supported by the objective evidence.

    **B.**    **Mental Disorders**

Regarding plaintiff's mental impairments, the ALJ discussed the medical evidence as follows:

> The claimant has been receiving mental health treatment since June 2003, initially with Teresa Frausto, M.D., and since October 2008 at a public mental health clinic. Ex. 2F; ex. 12F; ex. 37F. Initially, she presented with mild symptoms, formal mental status examination findings were within normal limits, and while here initial global assessment of

functioning (GAF) scores were in the 60's indicating moderate symptoms or limitations, they were in the 80's by November 2004. Ex. 12F at 15-16, 10-12, and 2-8. Following a gap in the treatment records, the claimant reported that she was doing well in March 2006 in terms of exercising and making dinner, and she was euthymic and had organized thought processes. Ex. 29F at 15. In April 2006, she reported increased symptomology because she had run out of Abilify, and in June 2006, she complained of increased problems due to pain and fatigue because of multiple pain medications. Ex. 29F at 13-14. When seen in October 2006, she was nine weeks post-detoxification for her opioid dependence, and the formal mental status examination findings were positive for slow thought processes, which remained the predominant feature through the last report in August 2007. Ex. 29F.

When a consultative psychiatric examiner [Dr. Smith] evaluated the claimant in October 2007, the claimant was found not to be a credible historian, the examiner noted the claimant denied alcohol usage and being able to drive, but she was observed to get in a large car or sport utility vehicle and drive away by herself. Ex. 31F. The formal mental status examination findings were well within normal limits, and the examiner stressed that there was no evidence of a bipolar disorder, obsessive compulsive disorder, or attention deficit hyperactivity disorder.

The claimant started treating with a new public mental health clinic provider in October 2008, saying she had to get her medication there because she no longer had the insurance needed to see Dr. Frausto. Ex. 37F at 23-24. She admitted to opioid medication dependence and daily consumption of a pint of alcohol, but except for being depressed and tearful, formal mental status examination findings were well within normal limits and a GAF score of 50, indicating marginally serious limitation or symptoms in one sphere of functioning and otherwise moderate limitation or symptoms, was assessed. *Id.* Although the claimant reported a series of crises including her husband's joint replacement surgery in March 2010, her staying in her room all day in April 2010, and her mother dying in May 2010, the formal mental status examination findings remained within normal limits and her treatment unchanged. Ex. 37F at 4-6.

At the hearing in 2006, the claimant emphasized primarily her physical problems, but also said she had violent mood swings, severe depressions that kept her in bed, binging and purging, and no concentration, and she stressed how she could do no cooking or household chores, how she had to lay down all day, and how her children had to do all of the housework. Court Transcript (CT) at 57-58 and 63-64. At the hearing in 2008, the claimant again emphasized her physical problems and how her daughter was home schooled in order to be at home to help her. CT at 76-79. At the recent hearing, the claimant did not complain of any physical problems except to note she had recently started using a continuous positive air pressure (CPAP) machine for her sleep apnea, but rather she emphasized that she did not drink, smoke, or use illicit drugs, that she was no longer using morphine and Oxycontin, that she had not driven in the past while

taking that medication, and that she had serious problems in the past because of her addiction to those drugs.

The ALJ then made the following findings:

> I find that the claimant's statements and testimony have been exaggerated and less than truthful. At the two earlier hearings, she emphasized her physical problems and described mental problems such as violent mood swings that were not reflected in the treating source records, and at the recent hearing blamed it all on addiction to the pain medication with no mention of mood swings, which would suggest improvement if she were credible. As noted, she also told the consultative psychiatric examiner [Dr. Smith] that she could not drive while she had driven herself to and from the evaluation by herself. Her attempt at the hearing in 2008 to challenge the consultative psychiatric examiner by saying the doctor had not adequately considered statements about her doctor giving her samples was not credible since the doctor at page 4 of Exhibit 31F credibly emphasized the exaggerated and random nature of the claimant's assertions that the doctor gave her "bags and bags" of samples. Like the medical expert at the hearing, Dr. Glassmire [who testified in addition to Dr. Landau], I find these assertions like the repeated findings of Dr. Frausto and the more recent treating psychiatrist, Dr. DeVera, contradicted by the treating source clinical findings that do not reflect more than mild findings on mental status examinations. Ex. 37F at 3; ex. 34F. The findings of the consultative psychological evaluation [performed by Dr. Griffin] obtained in June 2010 by the claimant's representative for this matter are questionable in that the examiner elicited symptoms related to obsessive compulsive disorder that were not reflected in the treating mental health records, there was no formal mental status examination or testing of memory and concentration, and the GAF score of 49 was not credible since it relied heavily on the unsubstantiated diagnosis of obsessive compulsive disorder and bereavement based on the then very recent death of her mother. Ex. 35F. . . .

Plaintiff claims that the ALJ's "stated reasons for rejecting the assessments of [Drs. Frausto, DeVera, and Griffin] rely on mischaracterizations of their findings and do not comply even with the law's less stringent demand that the rationales be merely 'specific and legitimate.'" As to Drs. Frausto and DeVera, plaintiff argues: (1) the ALJ erred by allowing instances of plaintiff's exaggeration or fabrication to impugn on the doctors' opinions; and (2) contrary to the ALJ's characterization, the doctors noted far more than mild abnormalities. As to Dr. Griffin, plaintiff claims: (1) the ALJ erred in questioning all of the doctor's assessments in light of a single diagnosis of obsessive compulsive disorder which the ALJ found

was not supported by the objective evidence; (2) the ALJ erred in concluding that Dr. Griffin did not conduct an objective examination; and (3) the ALJ improperly discounted the GAF score of 49 assigned by Dr. Griffin.

### 1. Drs. Frausto and DeVera

Plaintiff argues that the ALJ erred by allowing instances of exaggeration or fabrication to affect her assessment of the doctors' opinions. According to plaintiff: "The issues of Ms. Sullivan's credibility and that of her treating physicians are wholly separate matters." While the court agrees in the sense that a doctor's trustworthiness is not necessarily undermined by an untrustworthy patient, the trustworthiness of a doctor's opinions of that patient's reported impairments is. See Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). To the extent the ALJ likens exaggerations in plaintiff's statements to the opinions of Drs. Frausto and DeVera, which in the ALJ's view were exaggerated in light of the clinical evidence, the ALJ was simply making this logical connection.

Plaintiff also argues that the ALJ mischaracterized the doctors' observed abnormalities as only "mild." This is indeed the heart of the issue concerning Drs. Frausto and DeVera – whether their clinical observations showed only mild abnormalities, in which case the assessments of these doctors' opinions as "exaggerated" could not be faulted. The court finds that the record supports the ALJ's characterization of the clinical observations. Most notably, while Dr. Frausto opined that plaintiff is significantly limited due to her mental impairments, the doctor consistently scored plaintiff's GAF well above 50. Twice in November 2004, Dr. Frausto assigned a GAF score of 85. In October 2004 Dr. Frausto assigned a GAF score of 80. In September 2004 Dr. Frausto assigned a GAF score of 70. Dr. Frausto assigned a GAF score of 80 in March 2004. As the ALJ concluded, these scores of 70 and above reflect only mild abnormalities. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

/ / /

/ / /

As to Dr. DeVera, the doctor submitted a letter on July 30, 2010, stating:

> Mrs. Galivan [sic] has been compliant with treatment for the past two years. Incidences where the client has been off her medications, she has significantly decompensated and/or become a danger to herself and others. . . .

All of the attached treatment notes from this doctor – which plaintiff concedes are largely illegible – indicate that plaintiff's compliance with medication and plan was "good." Because none of Dr. DeVera's records indicate non-compliance, the ALJ properly doubted the doctor's opinions that plaintiff was limited when non-compliant, and thus properly doubted all of the doctor's opinions given this inconsistency. Moreover, the ALJ's characterization of the clinical observations noted by Drs. Frausto and DeVera as "mild" is consistent with other doctors' assessments, notably those of agency consultative psychiatrist Dr. Smith and testifying expert Dr. Glassmire, both of whom opined that the objective evidence suggests only mild abnormalities.

### 2. Dr. Griffin

Plaintiff also argues that the ALJ erred by questioning all of the doctor's assessments because of one unsupported diagnosis of obsessive compulsive disorder. The court finds no error. As with Drs. Frausto and DeVera, whose opinions are an exaggeration of the objective evidence, Dr. Griffin concluded that plaintiff suffers from an obsessive compulsive disorder despite a lack of objective clinical evidence indicating this impairment. And as with Drs. Frausto and DeVera, the ALJ was entitled to discount Dr. Griffin's opinion for this reason. Finally, the court finds that the ALJ properly rejected Dr. Griffin's opinions due to an inconsistency in the doctor's own report. Specifically, on the one hand the doctor opines that plaintiff is functionally disabled, as reflected by an assigned GAF score of only 49, but on the other hand the doctor states that plaintiff retains the ability to work, with marked limitations in four categories relating to plaintiff's ability to respond to other and work pressures.

///

///

### IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

        1.    Plaintiff's motion for summary judgment (Doc. 16) is denied;

        2.    Defendant's cross-motion for summary judgment (Doc. 18) is granted; and

        3.    The Clerk of the Court is directed to enter judgment and close this file.

DATED: March 29, 2013

                                              _____
                                              **CRAIG M. KELLISON**
                                              UNITED STATES MAGISTRATE JUDGE